HOLMAN, Appellant, v. LAWRENCE, Respondent. (Supreme Court, Appellate Division, Fourth Department. March 10, 1903.) Action by Thomas J. Holman against Emily W. Lawrence. Judgment for defendant, and plaintiff appeals. Affirmed.

PER CURIAM. Judgment and order affirmed, with costs.

NASH, J. (dissenting). The plaintiff, as the assignee of the Courier Printing Company of Seneca Falls, brings this action to recover an indebtedness of one Costello to the company, assumed by the defendant upon the purchase from Costello of 20 shares of the capital stock of the company. The defendant on the 17th of August, 1896, purchased the 20 shares of stock of Costello at $130 a share, and to secure the payment of the purchase price of the stock ($2,600) gave her promissory note for $1,000 to Costello, and assumed the payment of an indebtedness of Costello to the company. The defendant having paid only $10 to apply upon the indebtedness, the stock was sold March 9, 1901, on notice to the defendant, and the sum of $550 realized upon the sale was applied upon the indebtedness, leaving an unpaid balance for the recovery of which this action is brought. The defense was that the contract for the sale of the stock to the defendant was procured by false and fraudulent representations of the officers of the company. The defendant upon the trial gave evidence to the effect that false and fraudulent representations were made by Costello as an inducement to the purchase of the stock, and it was left to the jury to say whether the representations were made by Costello in his own individual capacity, or whether, in making them, he was acting on behalf of the company, and, if found to have been made on behalf of the latter, the jury were instructed that their verdict must be for the defendant. The stock was the property of Costello. The 20 shares of stock were originally issued to him, and at the time of the sale to the defendant had been assigned to and were held by the company as collateral security for the payment of an indebtedness of Costello to the company, then amounting to $1,946. The contract of sale was in writing, in the form of a bill of sale executed by Costello, by the terms of which Costello, in consideration of $2,600 to him in hand paid, bargained and sold to the defendant 20 shares of the capital stock of the Courier Printing Company of Seneca Falls, then standing in his name on the books of the company; and the bill of sale provided that the defendant, as part of the consideration, should assume and pay an indebtedness of Costello to the Courier Printing Company to the amount

of $1;600. The defendant, pursuant to the latter provision of the bill of sale, executed and delivered to the Courier Printing Company an instrument in writing, reciting the sale to her by Costello of 20 shares of the capital stock of the Courier Printing Company, and thereby sold, assigned, transferred, and set over to the said company said 20 shares of stock, conditioned that, in case the defendant should pay the indebtedness which the assignment was collateral security for, then the assignment should be of no effect. The Courier Printing Company received from Costello, out of the avails of the discount by him of the $1,000 note of the defendant, $346, and the company executed and delivered to Costello its instrument in writing, reciting the sale by Costello to the defendant, and her assumption of payment of the indebtedness of Costello to the company, and its willingness to accept the defendant as its debtor in the place and stead of Costello; and for the consideration therein expressed the company released Costello from his indebtedness to the company and accepted the defendant as its debtor in his place and stead. The fact that Costello was the owner of the stock sold to the defendant was not questioned upon the trial. The 20 shares of stock were issued to Costello originally May 14, 1895. He testified as a witness upon the trial that he was the owner of the stock. The husband of the defendant, who acted for her in making the purchase, testified that his negotiations for the purchase were had with Costello. He testified to the representations made by Costello during the negotiations for the purchase. There was no evidence on the subject of the ownership of the stock offered by or on behalf of the defendant. The alleged false representations were in regard to the condition of the property of the company, its value, and the amount of its indebtedness, etc. The defendant's husband (Lawrence) testified that the representations were made by Costello. The only thing from which it is claimed on behalf of the defendant that the company was in any manner connected with the sale made by Costello to the defendant appears in this piece of evidence found in the testimony of Lawrence, in which he states a conversation had with Van Rensellaer, secretary and treasurer of the company, as follows: "I had a conversation with Costello in the presence of Wm. Van Rensellaer. That was the night before the transaction was closed—the night of the 16th of August, I think it was, in 1896. Costello was present. The subject of this sale was a matter of conversation between us. I asked Van Rensellaer the same question that I had Costello previously. He gave a similar answer. He said there were no debts, except for pay roll, and perhaps some little petty current accounts. That conversation was in the office of the Courier Printing Company." It is suggested that Van Rensellaer, who, with Costello, made up two of the directors, and were the active managers, and the president, secretary, and treasurer, of the company, acquiesced in whatever statements were made by Costello as to the conditions of the company, and the company, having received in part the fruits of these representations, must be charged with knowledge of them. In reply to these suggestions it need only be said that Costello, as president and director, had no authority as such to bind the company by any representations which he might make in selling stock of the company which belonged to him. Neither Costello nor Van Rensellaer, as officers of the company, had any power to make any representations for the company regarding a transaction to which the company was a stranger, and as to which it had no pecuniary interest. The company, therefore, took no part in the transaction of the sale, had no pecuniary interest in, and did not receive any part of the avails of the sale of Costello's stock as such. It received only a part of the debt due to it from Costello, paid by him out of the avails of the sale of his stock. The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

McLENNAN, J., concurs.